Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
Drew P. Taylor, OSB 135974
email: drew@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COBBLER NEVADA, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **ANONYMOUS USERS OF POPCORN TIME: DOES 1 - 11,** <br><br> Defendants. | Case No.: 3:15-cv-1550 <br><br> COMPLAINT <br><br> COPYRIGHT INFRINGEMENT <br><br> DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiff Cobbler Nevada, LLC ("Cobbler Nevada"), complains and alleges as follows:

JURISDICTION AND VENUE

1.      This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright

Act").

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a)

as the defendant is believed to reside in this district.

COMPLAINT                                                                                  Page 1 of 11

PARTIES

PLAINTIFF

4.      Plaintiff Cobbler Nevada is a Limited Liability Company with principal offices in Los

Angeles, California.

The Rights of Cobbler Nevada

5.      *The Cobbler* is a major motion picture that was released in theaters in March 2015.

6.      *The Cobbler* has been registered with the United States Copyright Office by the owner,

Cobbler Nevada, Registration No. PAu 3-744-688, 2014.

7.      Under The Copyright Act, Cobbler Nevada is the proprietor of all copyrights and

interests needed to bring suit.

8.      The motion picture contains wholly original material that is copyrightable subject matter

under the laws of the United States.

9.      The motion picture is currently offered for sale in commerce.

10.     Defendant had notice of plaintiff's rights through general publication and advertising and

more specifically as identified in the content of the motion picture, advertising associated with

the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

11.     Cobbler Nevada comes to court seeking relief as the motion picture *The Cobbler* is the

subject of significant piracy and has been illegally downloaded and distributed countless times

worldwide with over 10,000 confirmed instances of infringing activity traced to Oregon.

12.     Faced with extensive piracy, Cobbler Nevada is forced to defend its rights though this

action.

///

THE DEFENDANTS

13.     The defendants are identified herein as Does 1 – 11, and more specifically identified in

EXHIBIT 1.

14.     Each defendant has been confirmed to be using the Popcorn Time file sharing software

that is specifically designed for and intended for committing theft, including theft of plaintiff's

motion picture.

15.     Each defendant has been established as a user of the Popcorn Time who willfully

infringed plaintiff's rights.

16.     The defendants in this action are specifically listed in EXHIBIT 1, which identifies each

defendant's IP address and a specific time of observed infringing activity, estimated geo-located

place of the defendant's conduct and the specific version of Popcorn Time used.

17.     Each defendant's IP address has been observed and confirmed as both viewing and

distributing plaintiff's motion picture through Popcorn Time.

18.     Each defendant's IP address has been observed as associated with the peer-to-peer

exchange of other copyrighted titles through the Bit Torrent network.

19.     At the time of observed infringement each defendant's IP address was managed by

Internet Service Provider ("ISP") Comcast, who on information and belief, generally assigns an

IP address to a single party for extended periods of time, often for months, and provides Wi-Fi

systems with notable pre-installed security and passwords.

20.     The records maintained by Comcast should be able to identify either each defendant, or a

subscriber who contracted with Comcast for service who in turn is likely to have knowledge that

will lead to the identity of each defendant.

21.     Plaintiff intends to seek initial discovery to subpoena records from Comcast to ascertain

the true identity of each defendant.

BACKGROUND

PEER-TO-PEER INTERNET PIRACY

22.     As stated by Congressman Lamar Smith, "Illegal counterfeiting and piracy costs the U.S.

economy $100 billion and thousands of jobs every year."

23.     As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In

the world of copyright law, taking someone's intellectual property is a serious offense,

punishable by large fines.  In the real world, violations of copyright law over the Internet are so

widespread and easy to accomplish that many participants seem to consider it equivalent to

jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual

property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others

involved in creative work.  And it is unfortunate that the software being used – called 'file

sharing' as if it were simply enabling friends to share recipes, is helping create a generation of

Americans who don't see the harm."

24.     In 2013, in recognition of the growing problems and challenges with counterfeiting and

piracy, The Oregon House of Representatives passed House Memorial 2, which made the

following findings:

> Whereas the United States and other nations share the challenge of combating
> intellectual piracy and the counterfeiting of intellectual property such as … films… and
> technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's
> economy, and the economies of other states and of nations around the world, which
> results in job and earnings losses, reduced tax revenues and increased threats to public
> health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future
> of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7
> trillion in gross output and account for more than 60 percent of total exports from our
> nation; and

> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
> Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas intellectual property, including trademarks, [are] essential …; and
> …
> Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
> …

25.    As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

POPCORN TIME

26.    Unlike other software programs that facilitate piracy which have arguably legitimate purposes (many parties point to the mere potential to exchange public domain content), the software at issue in this case is Popcorn Time.

27.    **Popcorn Time exists for one purpose and one purpose only: to steal copyrighted content.** See generally:  https://en.wikipedia.org/wiki/Popcorn_Time

28.    In the accessing of the Popcorn Time web page, parties are alerted to this fact with the clear notation: Downloading copyrighted material may be illegal in your country.  EXHIBIT 2.

29.    The web page for the Popcorn Time 'Frequently Asked Questions,' or the FAQ page elaborates with the response to the question:

Is this legal?

Depends on where you're from, really. Once again: we're using torrents, so if you really care, you'd better google what the legal situation around this protocol is where you live. EXHIBIT 3.

30.     The web page FAQ clearly notifies users they will be publishing movies and "seeding" the movies they watch with the statement:

"You're going to be uploading bits and bits of the movie for as long as you're watching it on Popcorn Time."

31.     When the Popcorn Time software is installed, users are required to accept Terms of Service and acknowledge:

"ALL MOVIES . . . ARE STREAMED USING THE P2P BIT TORRENT PROTOCOL. . . . BY WATCHING A MOVIE WITH THIS APPLICATION YOU MIGHT BE COMMITTING COPYRIGHT VIOLATIONS..."

EXHIBIT 3, Caps in original.

32.     Without a doubt, each user of Popcorn Time is provided multiple notices that they are downloading and installing software for the express purpose of committing theft and contributing the ability of others to commit theft by furthering the Bit Torrent piracy network.

33.     Once installed, a user is then able to view available pirated movies to download and view, many still in theatres.  Exemplar View presented as Exhibit 4.

34.     Plaintiff's motion picture *The Cobbler* is promoted by Popcorn Time as one the most popular movies to watch under the 'comedy' category of motion pictures.  Exhibit 4.

35.     Once a party clicks on a motion picture, such as plaintiff's they are then brought to a launch screen, which provides options, including the ability to select subtitles, or resolution (720 v. 1080).   Exhibit 5.

36.     Once a party actually views the motion picture, they are presenting with copyright notices

and warnings, which based on the regular activity associated with each defendant's IP address

have been repeatedly disregarded.

37.     Without a doubt, the download, installation, and use of Popcorn Time is for the informed

sole and willful express purpose of committing theft.

38.     Each user of Popcorn Time joins in this conduct with the informed express intent of both

furthering their own acts of theft, and facilitating the theft by others as each Popcorn Time user is

provided a notice, often multiple times, that they are accessing copyrighted material and acting

as a "seeder" for others.  See generally Exhibits 2 – 4.

39.     Each user of Popcorn Time expressly joins in a conspiracy to jointly commit theft of

copyrighted material, including the content of plaintiff and to facilitate the theft of content by

others.

40.     Popcorn Time cannot be considered to have any reasonable legal or legitimate use.

41.     The mere possession of a software program like Popcorn Time is the type of conduct that

the State of Oregon has criminalized in ORS 164.235, which reads in part:

    164.235 Possession of a burglary tool or theft device. (1) A person commits the crime of

    possession of a burglary tool or theft device if the person possesses a burglary tool or

    theft device and the person:

            (a) Intends to use the tool or device to commit or facilitate … a theft by a

                physical taking; or

            (b) Knows that another person intends to use the tool or device to commit or

                facilitate a … theft by a physical taking.

(2) For purposes of this section, "burglary tool or theft device" means … [any]
instrument or other article adapted or designed for committing or facilitating a … theft by
a physical taking.

(3) Possession of a burglary tool or theft device is a Class A misdemeanor.

42.     It is acknowledged that the transfer of data, storing of the physical data locally on a hard
drive and facilitation and redistribution of the stolen data to others may or may not be a "physical
taking" under Oregon law.

43.     Whether or not the mere possession and use of Popcorn Time is a Class A misdemeanor
under Oregon Law and punishable by up to one year in jail (ORS 161.615(1)) and a fine of
$6,250.00 (ORS 161.635(1)(a)) may be argued.   But there is no doubt that use of Popcorn Time
constitutes serious willful copyright infringement.

## JOINDER

44.     Plaintiff acknowledges that joinder in this action under FRCP 20(a)(2) is permissive in
that plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences
or transactions and that there are questions of law and fact common to each of the defendants.

45.     All the defendants have collectively acted through the willful and intentional use of
Popcorn Time with the express purpose of committing intellectual property theft, damaging
plaintiff.

46.     All of the defendants have collectively acted with notice that their individual and
collective conduct facilitated intellectual property theft being committed by others.

47.     Each of the defendants willfully joined in the collective conspiracy of using Popcorn
Time for an illegal purpose and willfully acted to cause harm to plaintiff and to assist others,

including each other defendant, in causing harm to plaintiff through their use of and support of Popcorn Time and the Bit Torrent distribution of motion pictures.

48.     The plaintiff's rights to relief, as stated below, ultimately arise out of the same series of inter-related transactions and occurrences.

49.     This action also raises substantial questions of law and fact common to all defendants.

50.     Permissive joinder in the instant case is to permit a more efficient management of the claims of plaintiff against the several defendants and to reduce the costs to plaintiff and defendants and to reduce the costs and burdens on the Court.

51.     Notice is provided, that on being specifically identified and on request from an identified defendant, plaintiff agrees to sever any defendant that claims prejudice in being joined in this matter and proceed against each such defendant individually.

52.     Plaintiff intends to provide updates to the court on the status of this action and the status of each defendant on a regular basis.


## CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

53.     Defendants and each of them, without the permission or consent of plaintiff, copied and distributed plaintiff's motion picture through the Bit Torrent network using the Popcorn Time software without authorization or right.

54.     Each defendant's conduct included willful acts intended to infringe plaintiff's exclusive rights under The Copyright Act and furthered the publication and distribution of copies of plaintiff's motion picture to others.

55.     Each defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights with notice and the intent to deprive plaintiff of income and cause plaintiff harm.

56.     As a direct and proximate result of each defendant's conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

57.     Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505 from each defendant.

58.     The conduct of each defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

59.     Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting each defendant from further contributing to the infringement of plaintiff's copyrights and ordering that each defendant destroy all copies of the motion picture made in violation of plaintiff's rights and refrain from using Popcorn Time or any peer-to-peer software to download or distribute content without a license.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against each defendant as follows:

A.     For entry of permanent injunction enjoining each defendant from directly, indirectly or contributorily infringing plaintiff's rights, including without limitation using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff;

B.      For entry of permanent injunction enjoining each defendant from using Popcorn

Time or any peer-to-peer software to download or distribute content without a

license;

C.      Statutory damages pursuant to 17 U.S.C. § 504;

D.      For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

E.      For such other and further relief as the Court deems proper.


DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by

jury.

DATED: August 16, 2015.


Respectfully submitted,

CROWELL LAW

*/s/ Carl D. Crowell*
Carl D. Crowell, OSB No. 982049
carl@crowell-law.com
Drew P. Taylor, OSB No. 135974
drew@crowell-law.com
503-581-1240
Of attorneys for the plaintiff